# No. 23-567

(*For Continuation of Docket Numbers See Inside Cover*)

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

FAIRFIELD SENTRY LIMITED (IN LIQUIDATION), ET AL.,

*Plaintiffs-Respondents*,

v.

CITGO GLOBAL CUSTODY NV,

*Defendant-Petitioner.*

_____

On Appeal from the United States District Court for the
Southern District of New York, No. 21-cv-3302

_____

## PLAINTIFFS-RESPONDENTS' BRIEF IN OPPOSITION TO
## PETITIONS FOR LEAVE TO APPEAL PURSUANT TO 28 U.S.C. §1292(b)

_____

DAVID J. MOLTON
BROWN RUDNICK
LLP Seven Times Square
New York, NY 10036
(212) 209-4800

DAVID ELSBERG
ANDREW R. DUNLAP
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

PAUL D. CLEMENT
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

April 17, 2023     *Counsel for Plaintiffs-Respondents*

**23-517, 23-523, 23-525, 23-526, 23-530,**

**23-532, 23-535, 23-537, 23-541, 23-543, 23-545,**

**23-549, 23-565, 23-572, 23-573, 23-576, 23-579**

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Kenneth M. Krys and Greig Mitchell, in their capacities as liquidators and foreign representatives of Fairfield Sentry Limited (In Liquidation), Fairfield Sigma Limited (In Liquidation), and Fairfield Lambda Limited (in Liquidation) (together, the "Funds"), hereby state that none of the Funds has a parent corporation, and there is no publicly held corporation owning ten percent (10%) or more of the shares of any of the Funds.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES.................................................................................iii

INTRODUCTION ................................................................................................ 1

STANDARD OF REVIEW .................................................................................. 4

ARGUMENT ....................................................................................................... 5

I. The Ultimate Termination Of This Litigation Will Not Be Materially Advanced By Allowing What Is, Even On Petitioners' Own Account, Effectively A Series Of Late-Breaking Cross-Appeals................... 6

II. There Are No Substantial Grounds For Difference Of Opinion On The Issue Actually Presented Here................................................................. 8

III. No Exceptional Circumstances Support Interlocutory Appeal Here............ 17

CONCLUSION .................................................................................................... 19

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Couch v. Telescope Inc.*,
611 F.3d 629 (9th Cir. 2010)...................................................................................11

*Fabrikant v. French*,
691 F.3d 193 (2d Cir. 2012)......................................................................................7

*Garber v. Off. of the Comm'r of Baseball*,
120 F.Supp.3d 334 (S.D.N.Y. 2014)......................................................................11

*Gelboim v. Bank of Am. Corp.*,
574 U.S. 405 (2015).................................................................................................5

*In re ABC Learning Centres Ltd.*,
728 F.3d 301 (3d Cir. 2013)....................................................................................16

*In re Air Crash at Georgetown, Guyana on July 30, 2011*,
33 F.Supp.3d 139 (E.D.N.Y. 2014)........................................................................10

*In re Bankr. Est. of Norske Skogindustrier ASA*,
629 B.R. 717 (Bankr. S.D.N.Y. 2021) ............................................................ 12, 13

*In re Condor Ins. Ltd.*,
601 F.3d 319 (5th Cir. 2010)........................................................... 13, 14, 15

*In re Ephedra Prod. Liab. Litig.*,
349 B.R. 333 (S.D.N.Y. 2006)................................................................................16

*In re Fairfield Sentry Ltd. Litig.*,
458 B.R. 665 (S.D.N.Y. 2011) ...............................................................................13

*In re Fairfield Sentry Ltd.*,
2020 WL 7345988 (Bankr. S.D.N.Y. Dec. 14, 2020).................. 8, 12, 14, 16

*In re Fairfield Sentry Ltd.*,
2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021) ...................... 4, 9, 10, 15

*In re Flor*,
79 F.3d 281 (2d Cir. 1996)......................................................5, 10, 11, 17

*In re Lehman Bros. Holdings Inc.*,
　　2010 WL 10078354 (S.D.N.Y. Sept. 23, 2010)...................................... 17, 18

*In re Lehman Bros. Holdings Inc.*,
　　2014 WL 3408574 (S.D.N.Y. June 30, 2014)..................................................18

*In re Tronox Inc.*,
　　503 B.R. 239 (Bankr. S.D.N.Y. 2013) ..........................................................7

*Isra Fruit Ltd. v. Agrexco Agric. Export Co.*,
　　804 F.2d 24 (2d Cir. 1986)...........................................................................11

*Jackson v. Caribbean Cruise Line, Inc.*,
　　88 F.Supp.3d 129 (E.D.N.Y. 2015)...............................................................11

*Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione*
　　*Motonave Achille Lauro in Amministrazione Straordinaria*,
　　921 F.2d 21 (2d Cir. 1990)............................................................................4

*Koehler v. Bank of Berm. Ltd.*,
　　101 F.3d 863 (2d Cir. 1996).........................................................................1

*LaSala v. Bordier Et Cie*,
　　519 F.3d 121 (3d Cir. 2008).........................................................................16

*Union Cnty. v. Piper Jaffray & Co.*,
　　525 F.3d 643 (8th Cir. 2008).......................................................................11

*Wachovia Bank, N.A. v. Burke*,
　　414 F.3d 305 (2d Cir. 2005).........................................................................12

**Statutes**

11 U.S.C. §561 ....................................................................................................14

11 U.S.C. §1501 ..................................................................................................13

28 U.S.C. §1292 ....................................................................................................4

**Other Authorities**

Appellants' Opening Br., *In Re: Fairfield Sentry Ltd.*,
　　No. 22-2101 (2d Cir. filed Jan. 27, 2023)......................................................3

H.R. Rep. No. 109-31 (2005)................................................................................16

Reply in Supp. of Mot. for Certificate of Appealability,
No. 19-cv-3911 (S.D.N.Y. filed Nov. 18, 2022), ECF No. 637.......................7

## INTRODUCTION

For more than a decade, innocent investors in foreign-based funds have been waiting to recoup some of the losses they suffered when Bernie Madoff's now-infamous Ponzi scheme collapsed. The petitions for interlocutory review all seek to delay the day of reckoning further and block any recovery altogether even for knowing misconduct in clear violation of British Virgin Islands ("BVI") common law. The requests should be denied. Interlocutory appeals are the "rare exception to the final judgment rule." *Koehler v. Bank of Berm. Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996). The denial of a motion to dismiss is the archetypal non-appealable interlocutory ruling, and granting more than a dozen extraordinary interlocutory appeals at this juncture would only delay and complicate the already-pending and partially briefed consolidated appeals currently before this Court. The better course is to deny these petitions and resolve the pending appeals.

First, even accepting petitioners' convoluted theory that the issues in the interlocutory appeals would overlap with or even duplicate an issue in the pending appeals, granting their petitions is highly unlikely to speed the ultimate resolution of any part of this sprawling bankruptcy litigation. These long-running, complex cases involve investors in several funds organized under BVI law and the Liquidators appointed under BVI law to recover and distribute assets to the investors that were left holding the bag when Madoff's scheme collapsed. Because other Madoff

investors managed to cash out early and receive falsely inflated profits out of the principal of their fellow investors who were not so lucky, the Liquidators have attempted to recoup those distributions for equitable distribution to innocent investors. Last fall, the district court affirmed the dismissal of many of the Liquidators' claims while affirming the denial of motions to dismiss certain BVI-law claims against the defendants with the greatest alleged knowledge of the fraud. The pending appeals of the dismissed claims have proceeded apace, with the opening appellate brief filed back in January and Appellees' briefs due in a matter of weeks. Petitioners seek to inject non-dismissed claims against the most culpable defendants into those already-complicated consolidated appeals, which involve multiple issues and countless parties, and to have these late-breaking interlocutory appeals "briefed quickly and argued together with" the existing appeals. Pet.19.[1] Needless to say, that process cannot occur without complicating and delaying the pending appeals.

There is no justification for that delay and complication. Petitioners contend that their proposed interlocutory appeals would focus on a question similar to one already raised in the pending consolidated appeals and thus judicial economy would be served by consolidation. That premise is highly debatable, but even if true, the conclusion does not follow. If the issues are indeed similar, then nothing stops

_____

[1] The multiple petitions for interlocutory review that have been filed are all identical. When we cite to one, we cite to all.

2

petitioners from filing an amicus brief in the pending appeals and seeking reconsideration below in light of this Court's ultimate resolution of the "same" issue. And petitioners do not even seek to stay the proceedings below pending their proposed interlocutory appeals—indeed, they expressly represented to the district court that they would not do so—so there is no saving of judicial resources to be had by granting the petitions, only complication and delay.

Second, there is a very good reason that even a district court willing to dismiss the Liquidators' other claims (*i.e.*, the ones currently on appeal) went the other way on these particular BVI-law claims: Petitioners' theory that the Supremacy Clause extends to foreign-law non-avoidance claims is groundless, and there is no real room for reasonable difference of opinion on that question. Injecting a Supremacy Clause issue on behalf of defendants with the greatest alleged knowledge of Madoff's fraud into an already-complicated set of pending appeals would frustrate, rather than serve, judicial economy and make things more difficult for all involved, this Court included. While the Liquidators' opening brief covered a lot of ground, its 19,000-plus words do not include "Supremacy Clause" or any variation of "preemption." *See* Appellants' Opening Br., *In Re: Fairfield Sentry Ltd.*, No. 22-2101 (2d Cir. filed Jan. 27, 2023). And petitioners' assertion that the constructive trust claims against knowing wrongdoers at issue here "duplicate precluded avoidance claims," Pet.3, is wholly mistaken; the BVI common-law constructive trust claims are not avoidance

3

claims at all. *See In re Fairfield Sentry Ltd.*, 2021 WL 771677, at \*3 (Bankr. S.D.N.Y. Feb. 23, 2021) ("the Constructive Trust and BVI Avoidance Claims proceed on different theories and different proof").

Finally, petitioners have not shown that exceptional circumstances support interlocutory review here. They do not even really try. Instead, they just note that "clear guidance" on the scope of Section 546(e) would be helpful given New York's importance to global markets. *See* Pet.22. But helpful is a far cry from extraordinary. Early appellate guidance would often be helpful, but the countervailing costs of delay and disruption explain the strong judicial presumption against piecemeal appeals. Petitioners have not carried their burden of overcoming that presumption. This Court should deny the petitions for interlocutory appeal.

## STANDARD OF REVIEW

In reviewing petitions for interlocutory review, this Court "must first determine whether the district court properly found that the requisites for section 1292(b) certification have been met." *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 23 (2d Cir. 1990). That means asking whether the underlying orders involve "a controlling question of law as to which there is substantial ground for difference of opinion" and whether "immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. §1292(b). If those criteria are not

4

met, then the petitions must be denied.  And even if they *are* met, this Court still retains discretion to deny interlocutory review, *Gelboim v. Bank of Am. Corp.*, 574 U.S. 405, 416 (2015), because "only exceptional circumstances will justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment," *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (brackets omitted).

## ARGUMENT

If petitioners are right about the nature of the question they want answered (which is a decidedly big if), then allowing interlocutory review will add nothing, save needless delay and additional complexity, to the pending appeals that they say already present that issue.  Indeed, if the petitions truly present "the same question" as an issue already being briefed in the consolidated appeals (by many of the same parties), Pet.1, 19, then those petitioners who are not parties to the consolidated appeals can file an amicus brief, and all petitioners can move for reconsideration in the district court should the defendants prevail in the pending appeals.  Petitioners are not asking to stay the lower-court proceedings on the non-dismissed claims, so there will be no savings of judicial or party resources from granting these interlocutory appeals rather than proceeding apace with the pending appeals from final judgments.  Moreover, petitioners present no authority or argument showing a substantial ground for difference of opinion on the actual reasoning of the decisions below, which turned on the straightforward conclusion that the Supremacy Clause

does not extend to foreign-law claims (especially in the context of a statute designed to facilitate the resolution of such claims). Nor are there any exceptional circumstances here to justify interlocutory review. These late-breaking efforts to complicate and delay the already-pending and partially briefed consolidated appeals should be denied.

**I.     The Ultimate Termination Of This Litigation Will Not Be Materially Advanced By Allowing What Is, Even On Petitioners' Own Account, Effectively A Series Of Late-Breaking Cross-Appeals.**

In petitioners' telling, the preemption issue on which they lost below "substantially overlaps" with the extraterritoriality issue currently being briefed in the consolidated appeals—or perhaps even (somehow) presents "the same question." Pet.1, 19. That is not a realistic description of the issue petitioners are raising, as discussed in Part II, *infra*. But even accepting petitioners' reframing, that is an excellent argument for the non-parties to file an amicus brief or for the parties to brief the supposedly "same" issue in a way that will benefit them on the Liquidators' foreign-law claims alleging knowledge of the fraud. It is not a valid basis for complicating and delaying the pending appeals that are already midway through briefing. Simply put, if petitioners are correct that the issue they seek to have this Court to resolve is the same as one already before it in the pending appeals, then there is nothing to be gained by interlocutory review. By contrast, if the issue is

materially different, then granting the petitions cannot help but complicate and delay the pending appeals. Either way, granting the petitions has little to recommend it.

Petitioners argue that because (on their theory) the claims that were not dismissed implicate the Bankruptcy Code's safe-harbor provision, that weighs in favor of interlocutory review. *See, e.g.*, Pet.9 ("The safe harbor's purpose is fundamentally undermined by subjecting parties to safe-harbored transactions to decades of litigation."). But that merely begs the question of whether these transactions were in fact "safe-harbored." In all events, petitioners overlook that "§546(e) is a classic affirmative defense." *In re Tronox Inc.*, 503 B.R. 239, 339 (Bankr. S.D.N.Y. 2013). And outside the singular context of immunity from suit or process, denials of affirmative defenses do not get fast-tracked for appellate review. *Cf. Fabrikant v. French*, 691 F.3d 193, 212 (2d Cir. 2012) (interlocutory appeals from denials of qualified immunity are allowed because qualified immunity is "an immunity from suit rather than a mere defense to liability").

Finally, it bears emphasis that the litigation on the non-dismissed claims will move forward in the courts below whether or not these petitions are granted. Petitioners have neither sought nor obtained a stay of the pending litigation; indeed, they expressly disavowed any intent to do so. *See* Reply in Supp. of Mot. for Certificate of Appealability at 3, No. 19-cv-3911 (S.D.N.Y. filed Nov. 18, 2022), ECF No. 637 ("Defendants have not sought and have no intention of seeking a stay

of the Bankruptcy Court proceedings while their Interlocutory Appeals are pending."). And for good reason, given the decade of delays that Respondents have already endured. Under those circumstances, there is no saving of judicial or party resources to be balanced against the inevitable complication and delay of the pending appeals.

In short, if the issue the petitions present really is substantially similar to an issue already being briefed, then little good can be done by throwing a wrench into an already complicated, multiparty, set of consolidated bankruptcy appeals. Rather than materially advance the ultimate termination of the litigation, it would burden the parties and the Court with additional briefing and argument for no good reason.

## II. There Are No Substantial Grounds For Difference Of Opinion On The Issue Actually Presented Here.

While petitioners have tried to recast the question presented by their proposed interlocutory appeals as being essentially the same as one already presented by the consolidated appeals, that characterization is highly suspect. Article VI, clause 2 of the Constitution has nothing to do with the claims at issue in the pending consolidated appeals. Yet it lies at the heart of the orders on the issue petitioners now seek to have reviewed. *See, e.g.*, *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *10 (Bankr. S.D.N.Y. Dec. 14, 2020) (refusing to dismiss constructive trust claims because "the Supremacy Clause applies to states and is inapplicable to considerations of federal law versus foreign law"); *In re Fairfield Sentry Ltd.*, 2021

WL 771677, at *3 (rejecting petitioners' frustration-of-purpose argument because "'[f]rustration of purpose' is the language of conflict preemption under the Supremacy Clause[,] … [and] U.S. preemption law, the basis for the decisions by the Defendants' authorities, does not apply to foreign law claims").  Even petitioners acknowledge as much, reciting the court's conclusion that their proposed appeals should address "the interaction between the Supremacy Clause and international comity principles."  Pet.3-4 (quoting Certification Order at 6-7).  The relationship between the Supremacy Clause and comity is simply not at issue in the pending consolidated appeals—but if the petitions were granted, yet another issue would join an already complicated array.

And petitioners' argument that "the Constructive Trust Claims are actually avoidance claims" has already been rejected because it is badly and obviously wrong.  *In re Fairfield Sentry Ltd.*, 2021 WL 771677, at *3.  "The BVI Avoidance Claims and the Constructive Trust Claims require proof of different elements."  *Id.* And the differences are far from trivial:  "Neither breach of fiduciary duty nor the defendant's knowledge, two of the three elements of the Constructive Trust Claims, are elements of the BVI Avoidance Claims."  *Id.*  The latter element—knowledge— is especially crucial here, where the Liquidators have alleged that petitioners "knew when they redeemed their interests in the Funds that the redemption prices were inflated."  *Id.* at *2.  And there are more differences besides that.  For instance,

"insolvency is an element of the BVI Avoidance Claims but not the Constructive Trust Claims." *Id.* at *3. Suffice to say that constructive trust claims are hardly avoidance claims by another name. Petitioners' contrary notion that the constructive trust claims "duplicate precluded avoidance claims," Pet.3, is without basis in law.

Moreover, while the question of whether the Bankruptcy Code preempts foreign law would certainly be a new issue in the consolidated appeals, it is not a close one. Indeed, not even petitioners claim that there are "substantial grounds for difference of opinion" based on the existence of judicial decisions that actually differ from one another on the bottom-line conclusion. Rather, like the district court, petitioners argue that interlocutory review is appropriate solely because the preemption issue is one of first impression. *See* Pet.10; Certification Order at 6. That is not a promising ground for demonstrating a difference of opinion.

"[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *In re Flor*, 79 F.3d at 284. After all, "[c]ertification for interlocutory appeal is not intended as a vehicle to provide early review of difficult rulings in hard cases." *In re Air Crash at Georgetown, Guyana on July 30, 2011*, 33 F.Supp.3d 139, 155 (E.D.N.Y. 2014). In part for that reason, some courts within this circuit have held that the "difficult and of first impression" language refers to situations in which other courts have weighed in and "Second Circuit input could help resolve

10

disagreements among other Courts of Appeals." *Garber v. Off. of the Comm'r of Baseball*, 120 F.Supp.3d 334, 338 (S.D.N.Y. 2014); *see also Jackson v. Caribbean Cruise Line, Inc.*, 88 F.Supp.3d 129, 142 (E.D.N.Y. 2015) (holding the same, because "[o]therwise, interlocutory appeals would be the norm, not the exception"). Petitioners have obviously not met that standard, as no court of appeals has ever held that the Bankruptcy Code preempts foreign common-law claims.

Nor does a lack of cases directly addressing a subject support interlocutory review. *See Union Cnty. v. Piper Jaffray & Co.*, 525 F.3d 643, 647 (8th Cir. 2008) ("a dearth of cases does not constitute substantial ground for difference of opinion"); *Couch v. Telescope Inc.*, 611 F.3d 629, 634 (9th Cir. 2010) (similar); *contra* Pet.12. It remains "the duty of the district judge … to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is *a substantial* ground for dispute." *In re Flor*, 79 F.3d at 284; *cf. Isra Fruit Ltd. v. Agrexco Agric. Export Co.*, 804 F.2d 24, 25 (2d Cir. 1986) ("[E]laboration by the district judge will normally be helpful in understanding why the judge believes that there is a 'substantial ground for difference of opinion.'"). Indeed, oftentimes a dearth of opinions addressing an issue just underscores that the issue is sufficiently cut-and-dried—or the parties' arguments sufficiently meritless— that the issue is rarely raised.

11

That is the case here.  Petitioners insist time and again that it simply *must* be wrong to allow the "Liquidators to pursue claims in a U.S. [C]ourt that a domestic litigant invoking state law would be precluded from asserting."  Pet.12; *see also* Pet.11, 16.  And petitioners argue that the courts "below erred in interpreting the Supremacy Clause at all."  Pet.13.  But the district court and bankruptcy court each analyzed the Supremacy Clause because petitioners invoked cases holding "that state law claims that seek to recover transfers shielded by the Safe Harbor are impliedly preempted by 11 U.S.C. §546(e)."  *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *9 (collecting cases); *see also id.* ("Relying on these and similar authorities, Defendants contend that the Constructive Trust Claims should be dismissed because they seek to unwind safe harbored redemption payments.").  It is not the courts' fault that petitioners relied on preemption-based authorities without recognizing that "[p]reemption does not apply to foreign law claims."  *In re Bankr. Est. of Norske Skogindustrier ASA*, 629 B.R. 717, 762 (Bankr. S.D.N.Y. 2021).  Nor should the courts be faulted for relying on the basic principle that "preemption doctrine is rooted in the Supremacy Clause of the Constitution."  *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005).

Petitioners accuse the courts below of "placing foreign law at the apex of the legal hierarchy."  Pet.16.  Not so.  Saying foreign law is not impliedly preempted in the same way as state law hardly makes foreign law superior to federal law.

12

Petitioners' misunderstanding rests on the assumption that allowing the Liquidators to bring foreign law claims in a Chapter 15 proceeding somehow contravenes public policy, *see* Pet.13-14, but that ignores the very policy that animates Chapter 15, whose "purpose is to maximize assistance to the foreign court conducting the main proceeding." *In re Fairfield Sentry Ltd. Litig.*, 458 B.R. 665, 679 (S.D.N.Y. 2011). As the Fifth Circuit has explained, Congress in enacting Chapter 15 "did not intend to restrict the powers of the U.S. court to apply the law of the country where the main proceeding pends." *In re Condor Ins. Ltd.*, 601 F.3d 319, 327 (5th Cir. 2010). Giving effect to BVI law in a Chapter 15 proceeding does not subvert public policy; it serves the very express public policy of Chapter 15. *See* 11 U.S.C. §1501 (explaining that the "purpose of this chapter is to incorporate the Model Law on Cross-Border Insolvency so as to provide effective mechanisms for dealing with cases of cross-border insolvency").

Allowing the constructive trust claims to go forward thus does not "conflict" with "international comity," *contra* Pet.16—but taking the opposite tack certainly would. It would "lend a measure of protection to debtors to hide assets in the United States out of the reach of the foreign jurisdiction," *In re Condor Ins. Ltd.*, 601 F.3d at 327, thus risking turning the Bankruptcy Code's safe harbor into "a safe haven for looters and fraudsters of foreign company assets that are transferred to the U.S. and who use banks or brokers to help carry out their schemes," *In re Bankr. Est. of Norske*

13

*Skogindustrier ASA*, 629 B.R. at 763 n.38.  That result would jeopardize the cross-border cooperation and comity that Chapter 15 was meant to foster.  *See In Re Condor Ins. Ltd.*, 601 F.3d at 321-25.  And it is of special concern here, where the relevant allegations are that petitioners *knew* that their inflated gains were too good to be true.  *Cf. In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *2 n.7 ("[T]he Knowledge Defendants cannot escape the consequences resulting from their knowledge that the redemption prices were based on fictitious assets.").

Perhaps recognizing that arguments based on statutory silence do little good given Chapter 15's aims, petitioners argue that a grab-bag of Bankruptcy Code provisions expressly foreclose the Liquidators' claims.  Pet.14-15.  First, petitioners argue that 11 U.S.C. §561(d) does the trick.  Under that provision, "[a]ny provisions" of the Code "relating to securities contracts" "shall apply in a case under [C]hapter 15" "to limit avoidance powers to the same extent as in a proceeding under [C]hapter 7 or 11."  11 U.S.C. §561(d).  And, petitioners surmise, since §546(e) provides safe harbor for certain transactions, §561(d)'s incorporation of certain limitations into Chapter 15 proceedings "to the same extent" as would apply in Chapter 7 or 11 proceedings must mean the Liquidators cannot bring their BVI-law claims if similar claims could not be brought under domestic law by a domestic trustee.  Pet.14.  Setting aside the (de)merits of that argument for present purposes, the furthest it can possibly stretch is a foreign representative's "avoidance powers," and crucially, the

14

constructive trust claims *are not avoidance claims*. Again, as the bankruptcy court explained, "[t]he BVI Avoidance Claims and the Constructive Trust Claims require proof of different elements" and "proceed on different theories and different proof." *In re Fairfield Sentry Ltd.*, 2021 WL 771677, at \*3. A provision about avoidance powers—whatever its reach—obviously leaves constructive trust claims untouched. *Id.* More than two years later, petitioners still have no answer for that point. That is for a simple reason: None exists.

None of the other provisions petitioners invoke help them either. They point to 11 U.S.C. §1507, which discusses "principles of comity." But that does them no good for the reasons given above—comity is served, not subverted, by allowing foreign representatives to bring foreign law claims in a Chapter 15 proceeding that they could bring in the courts of their own country. *See In re Condor Ins. Ltd.*, 601 F.3d at 327 ("Congress did not intend to restrict the powers of the U.S. court to apply the law of the country where the main proceeding pends.").

Petitioners also invoke 11 U.S.C. §1506, which makes clear that courts can refuse to take an action "manifestly contrary to the public policy of the United States." Pet.14. Of course, as discussed above, the public policy of the United States is well-served by fulfilling the design of Chapter 15 and minimizing the risk that a safe harbor provision could become a safe haven for fraud. The latter concern is especially important here, where the underlying claims are based on defendants

*knowing* "that the redemption prices were inflated" "when they redeemed their interests in the Funds," and based on "account statements listing securities that did not exist." *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *1. Moreover, even if petitioners had identified some tension between allowing the constructive trust claims to go forward and some element of public policy (which they have not), §1506 has never been read as broadly as petitioners appear to think it should be. To the contrary, "[t]he public policy exception has been narrowly construed, because the 'word "manifestly" in international usage restricts the public policy exception to the most fundamental policies of the United States.'" *In re ABC Learning Centres Ltd.*, 728 F.3d 301, 309 (3d Cir. 2013) (quoting H.R. Rep. No. 109-31(1), at 109 (2005)); *see also In re Ephedra Prod. Liab. Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006) (explaining how "the official Guide to the Enactment of the Model Law on Cross-Border Insolvency (from which Chapter 15 derives)" counsels in favor of a very narrow reading). Petitioners' off-target arguments about avoidance come nowhere close to showing that public policy requires reversal here.

None of that is to say that Congress cannot carve out restrictions on what foreign law is to be given effect in this arena. Congress can always alter the balance it has struck. *LaSala v. Bordier Et Cie*, 519 F.3d 121, 139 (3d Cir. 2008). But nothing in the Bankruptcy Code's text suggests that the current balance Congress struck forecloses the Liquidators' constructive trust claims. And petitioners have failed to

16

offer authority or argument showing that there is, or even could be, substantial grounds for disagreement on that issue. That provides another reason to refuse to hear an interlocutory appeal.

## III. No Exceptional Circumstances Support Interlocutory Appeal Here.

Even if §1292(b)'s statutory criteria were met—and they are not—this Court retains discretion to deny a petition for an interlocutory appeal. It should do so here because no "exceptional circumstances" justify any such appeal. *In re Flor*, 79 F.3d at 284. Petitioners make little effort to identify those circumstances here, primarily emphasizing that the scope of the Code's safe harbor provision is important to the securities markets. Pet.20-21. That is doubtless true. It is also doubtless *not* an exceptional circumstance. Most issues of federal law are important, but absent exceptional circumstances, their appellate resolution awaits a final appeal.

In the same vein, the sense of urgency petitioners momentarily adopt pairs poorly with the fact that the world of finance has not stopped spinning since the decisions below came down. Contrast that with petitioners' sole exceptional-circumstances case, *In re Lehman Bros. Holdings Inc.*, 2010 WL 10078354, at *1 (S.D.N.Y. Sept. 23, 2010). There, even the party opposing certification had to acknowledge that the bankruptcy court's decision had "upset market expectations," and the bankruptcy court's decision had "triggered significant uncertainty in the financial community." *Id.* at *9. All that led the district court to conclude that "the

17

decision's potentially game-changing effect on the structured finance business does militate in favor of reviewing the decision *now*—not months, or even years, from now." *Id.* Not so here. The district court did not even address the exceptional-circumstances question, much less do so based on a bankruptcy court's decision that roiled global markets and elicited a torrent of coverage and criticism.

Beyond that, petitioners' desire to determine the viability of the remaining claims "without waiting for the litigation to unfold in full before the Bankruptcy Court" is hardly an exceptional one. Pet.20. Petitioners "do not claim that waiting for a final order would cause them any prejudice beyond delay and added litigation expense," and those factors alone hardly represent exceptional circumstances. *In re Lehman Bros. Holdings Inc.*, 2014 WL 3408574, at \*3 (S.D.N.Y. June 30, 2014). Moreover, as noted, discovery and other proceedings on the constructive trust claims will proceed with or without the grant of these petitions.

In sum, the only thing extraordinary here is how little is to be gained by granting these petitions for review. If the issue is really the same as those in the pending appeals, then petitioners can benefit from this Court's decision in the pending appeals if they are correct on the merits and about the similarity. If the issues are different, then the last thing the pending appeals need is added complexity and what amounts to a slew of late-breaking cross-appeals. The only thing certain

is that granting these petitions will complicate and delay the pending appeals, which have been underway for months.

## CONCLUSION

For the reasons set forth above, this Court should deny the petitions.

Respectfully submitted,

DAVID ELSBERG
ANDREW R. DUNLAP
SELENDY GAY ELSBERG PLLC
1290 Avenue of the Americas
New York, NY 10104
(212) 390-9000

s/David J. Molton
DAVID J. MOLTON
BROWN RUDNICK LLP
Seven Times Square
New York, NY 10036
(212) 209-4800

PAUL D. CLEMENT
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com

*Counsel for Plaintiffs-Respondents*

April 17, 2023

19

**CERTIFICATE OF COMPLIANCE
WITH TYPE-VOLUME LIMITATION**

I hereby certify that:

1. This brief complies with the type-volume limitation of Local Rule 32.1(a)(4)(A) because it contains 4,453 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f), as determined by the word counting feature of Microsoft Word 2016.

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.


April 17, 2023

s/David J. Molton
David J. Molton

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 17, 2023, an electronic copy of the foregoing was filed with the Clerk of Court using the ECF system and thereby served upon all counsel appearing in this case.

s/David J. Molton
David J. Molton